UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SAMANTHA SMITH,

                Plaintiff,

                -v-               1:23-CV-1425 (DNH/PJE)

DOLGEN NEW YORK, LLC,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                OF COUNSEL:

EISENBERG & BAUM, LLP      ANDREW M. CLARK, ESQ.
Attorneys for Plaintiff
24 Union Square East, 4th Floor

OGLETREE DEAKINS         DARIUS WALKER, JR., ESQ.
Attorneys for Defendant
401 Commerce Street, Suite 1200
Nashville, NT 37219-2446

DAVID N. HURD
United States District Judge

## DECISION & ORDER

## I.    INTRODUCTION

On November 15, 2023, plaintiff Samantha Smith ("plaintiff") filed this action under 42 U.S.C. § 1981 and related state law against her former employer, defendant Dolgen New York, LLC ("defendant"). Dkt. No. 1. Defendant

answered, Dkt. No. 6, and the parties attempted mediation, Dkt. No. 16. When that failed, Dkt. No. 19, they completed a period of discovery, *see* Dkt. No. 23.

On March 31, 2025, defendant moved for summary judgment. Dkt. No. 24. The motion has been fully briefed, Dkt. Nos. 25, 26, 27, and will be considered on the basis of the submissions without oral argument.

## II.    BACKGROUND

The following facts are taken from a comparison of the parties' Local Rule 56.1 Statements. Dkt. Nos. 24-2, 25-1. Because plaintiff is the non-movant, the Court will adopt plaintiff's version of events (to the extent those events are supported with non-conclusory citations to the record in accordance with the requirements of Local Rule 56.1).

Plaintiff is a white female. Pl.'s Facts ¶ 12. She is married to a black male. *Id.* The couple have "biracial" children. *Id.* Defendant is a limited liability corporation ("LLC") that does business as "Dollar General," a national chain of retail stores with corporate headquarters in Tennessee. *See id.* ¶ 1.

On October 5, 2022, defendant hired plaintiff as a Store Manager Candidate ("SCM"). Pl.'s Facts ¶ 13. She trained for two weeks and was assigned to defendant's Johnston, New York location (the "Store"). *Id.* ¶ 14. Shortly thereafter, defendant hired Joshua Southworth ("Southworth") as the Store Manager ("SM") at that location. *Id.* ¶ 15. SM Southworth identifies as "biracial." *Id.* ¶ 16. His child is black. *Id.*

Plaintiff reported directly to SM Southworth.  Pl.'s Facts ¶ 15.  In January of 2023, SM Southworth began making "sexually charged comments" toward plaintiff.  *Id*. ¶ 24.  For instance, SM Southworth "would ask her on dates, tell her that he was not happy at home, and tell her that he wanted friends with benefits, which she declined."  *Id*. ¶ 25.  SM Southworth would also try to buy her food, *id*. ¶ 26, ask her to go to the bar, *id*. ¶ 27, ask her on more dates, *id*., tell her she was beautiful, *id*. ¶ 30, and "follow her around the store and purposely brush up against her when she bent over," *id*. ¶ 28.  According to plaintiff, he would also "rub[ ] his penis across her buttocks."  *See id*.

Plaintiff was not interested in any of SM Southworth's advances.  Pl.'s Facts ¶ 32.  She told him that his behavior was inappropriate and made her uncomfortable.  *Id*. ¶ 33.  In March of 2023, SM Southworth "began making racially disparaging comments about [plaintiff's] family."  *Id*. ¶ 38.  Although SM Southworth never met plaintiff's husband, she did bring her children to the Store at least once, which prompted SM Southworth to state: "Wow, I didn't know your kids were black, you're married to a [black] man?"  *Id*. ¶ 39.

Thereafter, SM Southworth began to "make jokes," such as "Oh, you like brothers, you can go cash them out," which plaintiff understood to mean that she liked black men.  Pl.'s Facts ¶ 40.  He also made disparaging comments about black men, such as "I can't believe you are married to a [black] guy, they are dirty" and "[black] men are dirty."  *Id*. ¶ 42.

Plaintiff told SM Southworth that these comments were not funny. Pl.'s Facts ¶¶ 43–45. She told SM Southworth that she did not want to hear these comments. *Id.* She also told SM Southworth that these comments were inappropriate. *Id.*

In late March of 2023, plaintiff reported SM Southworth's behavior to District Manager ("DM") Richard Handy. Pl.'s Facts ¶ 46. DM Handy failed to take plaintiff's complaints seriously. *See id.* ¶ 47. A few days later, plaintiff submitted a written complaint to defendant's "portal for complaints." *Id.* She also called Regional Manager ("RM") Jessica Smith to report SM Southworth's misconduct. *Id.* ¶ 48. RM Smith "assured" plaintiff that her complaint would be investigated. *Id.* But plaintiff never heard back from RM Smith. *Id.*

The parties dispute the adequacy of defendant's investigation into plaintiff's complaints. *See, e.g.*, Pl.'s Facts ¶¶ 49–53. However, the parties agree that SM Southworth was suspended while defendant investigated him for something. *Id.* ¶¶ 53–54. Thereafter, defendant issued a SM Southworth a "Final Counseling" and closed the investigation. *Id.* ¶¶ 55–57. According to plaintiff, this counseling was unrelated to her complaints about SM Southworth's behavior. *Id.* ¶ 58.

In April of 2023, plaintiff was promoted to Assistant Store Manager ("ASM"). Pl.'s Facts ¶ 18. The timing of this event and the investigation (discussed *supra*) is unclear, but plaintiff continued to report directly to SM

- 4 -

Southworth for a period of time. *Id.* ¶ 21. It is likewise unclear from the parties' offering exactly when this happened, but at some point after defendant's investigation into SM Southworth, plaintiff told DM Handy that she did not want to work with SM Southworth anymore "because she was uncomfortable working with him." *Id.* ¶ 59. She requested to be reassigned to a "local store within driving distance." *Id.* ¶ 60.

DM Handy offered plaintiff hours at other local stores, but according to plaintiff some of these opportunities did not work for her. *See* Pl.'s Facts ¶¶ 61–65. For instance, some locations were too far away for plaintiff because of her car troubles. *Id.* However, DM Handy told plaintiff she could pick up hours at any stores that needed her assistance and plaintiff agrees that she did pick up some of those shifts at other stores. *Id.* ¶ 68.

In early April (presumably of 2023), plaintiff began working as a driver for "Spark," a delivery service, while still employed by defendant. Pl.'s Facts ¶¶ 69, 76. Spark is a delivery company that "allows you to use your personal vehicle to shop for orders and deliver them to customers." *Id.* ¶¶ 70, 76. Plaintiff primarily worked for Spark to deliver Wal-Mart orders. *Id.* ¶ 70.

"Soon after" plaintiff started working for Spark, SM Southworth saw her at Wal-Mart with her children. Pl.'s Facts ¶ 82. He followed her around the store and into the parking lot. *Id.* "At some point," plaintiff agreed to take a shift at one of defendant's stores (the parties do not bother to say where), but

she did not show. *Id.* ¶ 71. According to plaintiff, she contracted the measles and told the store that she was sick and could not work. *Id.* ¶¶ 71, 123.

Thereafter, defendant "understood" that plaintiff had "voluntarily resigned" after learning about her job at Spark and her no-show for this scheduled shift. Pl.'s Facts ¶ 72. According to plaintiff, however, defendant "terminated" her because SM Southworth reported that he believed she was working at Wal-Mart. *Id.* Plaintiff was officially "terminated" from defendant's employment on May 18, 2023. *Id.* ¶ 73.

## III.   **LEGAL STANDARD**

The entry of summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is considered "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In conducting this analysis, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant. *Id.* at 255. But there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

## IV.    DISCUSSION

Plaintiff's seven-count complaint asserts § 1981 claims for race discrimination (Count One) and retaliation (Count Two).  Plaintiff's complaint also asserts New York State Human Rights Law ("NYSHRL") claims for disparate treatment based on race and sex (Counts Three, Four, and Five), a hostile work environment based on race and sex (Counts Four and Five), and retaliation (Count Five).  Finally, plaintiff's complaint asserts a claim under New York's Whistleblower Labor Laws (Count Six).  Plaintiff has withdrawn Count Seven, which asserted a common-law negligence claim.  *See* Dkt. No. 25 at 21–22.[1]

As an initial matter, the application of Section 1981 is slightly unusual in this context.  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a); *see also CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008); *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987).

"This section thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment."  *Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004) (cleaned up).  As the Second Circuit has explained, Section 1981 claims

---

[1]  Pagination corresponds with CM/ECF headers.

for employment discrimination borrow Title VII's substantive standards.[2] *See id.* at 225; *see also Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987).

So far, so good.  But plaintiff has not asserted a run-of-the-mill claim for Section 1981 discrimination based on her *own* race.  Instead, plaintiff has alleged Section 1981 race discrimination and retaliation claims based on her "association" with *someone else*, *i.e.*, her marriage to a black male (and her parentage of "biracial" children).  *See, e.g.*, Compl. ¶ 8.

Even so, this distinction does not actually make a difference.  The Second Circuit has held that Title VII covers this kind of "associational discrimination."  As relevant here, "where an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's *own* race." *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (emphasis in original).

In sum, plaintiff's Section 1981 claims—and her NYSHRL claims, for that matter—will be analyzed under Title VII's "core substantive standards." *Wiercinski*, 787 F.3d at 113 (Section 1981); *Chavis v. Wal-Mart Stores, Inc.*, 265 F. Supp. 3d 391, 398 (S.D.N.Y. 2017) (NYSHRL).

---

[2]  There are several meaningful distinctions between Title VII and Section 1981, including the fact that the latter provides for individual liability in certain contexts.  *Patterson*, 375 F.3d at 226.  But plaintiff has only named her former employer as a defendant.

Plaintiff has asserted race and sex discrimination claims on three primary theories: (1) disparate treatment; (2) retaliation; and (3) a hostile work environment.[3]

### 1. Disparate Treatment

First, plaintiff claims that defendant treated her less favorably than others because she is a woman married to a black man and has biracial children. In other words, plaintiff claims "disparate treatment" based on her "race" and/or "sex," which can be actionable if the defendant had a discriminatory intent or motive in taking the adverse employment-related action. *See, e.g.*, *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977 (1988).

An employer's discriminatory intent or motive can always be proven with direct evidence. *See, e.g.*, *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989). Direct evidence includes things like "a workplace policy, practice or decision [that] relies expressly on a protected characteristic," *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 213 (2015), or through "conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude," *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir. 1992).

---

[3] Plaintiff, who is represented by counsel, has apparently chosen not to assert a Section 1981 hostile work environment claim. Although there is a reference to a "hostile work environment" in one of the two Section 1981 counts in the pleading, Compl. ¶ 27, elsewhere plaintiff explains that this is a disparate treatment claim based on her alleged termination from employment, *see* Dkt. No. 25 at 8–11.

But an employer's intent and state of mind are "usually unstated." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). So most discrimination cases rely on the force of indirect proof. *See Krul v. DeJoy*, 705 F. Supp. 3d 5, 40 (N.D.N.Y. 2023) (collecting cases); *Sublett v. John Wiley & Sons*, 463 F.3d 731, 736 –37 (7th Cir. 2006) (characterizing indirect method of proof as the "more common" approach to establishing Title VII claim).

At summary judgment, a plaintiff can establish a disparate treatment claim based on indirect evidence: (1) by showing that the employer's stated reason for the challenged employment action was actually a "pretext" to cover-up unlawful discrimination; or (2) "by otherwise creating a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Vega*, 801 F.3d at 87.

A showing of "pretext" is the most common method for defeating summary judgment. To do so, the plaintiff must satisfy the evidentiary framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (distinguishing this evidentiary framework from party's burden of proof at trial).

Under this three-part burden-shifting framework, "(1) a plaintiff must first establish a *prima facie* case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell Douglas* framework and its

presumptions and burdens disappear, leaving the sole remaining issue of 'discrimination *vel non;*' and thus, (3) the burden shifts back to the plaintiff 'to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Krul*, 705 F. Supp. 3d at 40 (cleaned up).

As plaintiff explains, her disparate treatment claims are premised on defendant's alleged "termination" of her employment. Dkt. No. 25 at 8–11. Because this is summary judgment, the Court must credit plaintiff's version of events vis-à-vis her separation from employment: she started working for Spark without telling defendant, SM Southworth saw plaintiff at Wal-Mart one day, SM Southworth "reported [to defendant] that he believed [plaintiff] was working at Wal-Mart," and defendant "terminated" her employment in its internal record-keeping system on May 18, 2023. Pl.'s Facts ¶¶ 70–74.

An *involuntary* termination would obviously be an adverse employment action for purposes of a disparate treatment claim. *See, e.g.*, *Muldrow v. City of St. Louis*, 601 U.S. 346, 353 (2024) (requiring only "some harm respecting an identifiable term or condition of employment"); *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 269–70 (2d Cir. 2023) (identifying termination as an obviously qualifying employment action but emphasizing that a showing of "economic harm" is not necessarily required to satisfy this element of a claim).

However, even viewed in the light most favorable to plaintiff, it is not at all clear from the available record that a jury could fairly conclude that plaintiff was in fact *involuntarily* terminated by defendant. As the Second Circuit has explained, "[a]n actual discharge . . . occurs when the employer uses language or engages in conduct that would logically lead a prudent person to believe his tenure has been terminated." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 88 (2d Cir. 1996).

Plaintiff attempts to create a fact dispute on this issue (that is, whether she voluntarily resigned or defendant fired her or otherwise involuntarily terminated her) by emphasizing that SM Southworth made an entry in defendant's internal record-keeping system that, according to her, falsely or incorrectly indicated that she had taken another job. *See* Pl.'s Facts ¶¶ 73–74.

But as defendant points out, plaintiff has *only* pointed to these internal records—which were only made available later in discovery—rather than to any contemporaneous language or conduct from defendant that was actually conveyed to her about her job status. Dkt. No. 26 at 3–4. Notably, the facts offered by plaintiff (whether in response to defendant's initial factual offering or blocked off in the separate section for plaintiff's "additional" facts) do not fix this proof problem, either. Pl.'s Facts ¶¶ 65–134.

To be sure, the "actual discharge" inquiry "focuses on the reasonable perceptions of the employee, not on whether formal words of firing were in fact

spoken." *Chertkova*, 92 F.3d at 88 (2d Cir. 1996).  But even crediting the fact that defendant's internal record-keeping system contained the allegedly false notation by SM Southworth (about plaintiff taking another job), plaintiff has not pointed to any language or conduct from defendant (or its agents) that was conveyed to or known to plaintiff that might have led a reasonable person in her shoes to believe they were fired or otherwise unwelcome to continue working or picking up shifts.

Consider what has been made available to the Court.  Plaintiff acknowledges that she worked for Spark *and* defendant for at least some period of time. As defendant points out, after plaintiff requested not to work with SM Southworth, DM Handy offered her shifts at other stores, she was not prevented from working shifts at any other stores, and in fact she did work some shifts at other stores.[4]  *See* Pl.'s Facts ¶¶ 59–69.

What happened next?  It seems almost certain that there must be *something* in the discovery record that would substantiate plaintiff's claim that she

---

[4] These facts are fatal to any claim for "constructive discharge," which is a type of "adverse employment action" that occurs "when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Stofsky v. Pawling Cent. Sch. Dist.*, 635 F. Supp. 2d 272, 299 (S.D.N.Y. 2009).  First, plaintiff denies ever having resigned.  But that aside, she worked other shifts at other stores after asking not to be assigned to work with SM Southworth.  *See, e.g.*, *Williams v. Timberlodge Steak House*, 2005 WL 189726, at *10 (W.D.N.Y. Jan. 16, 2005) (collecting cases holding that a plaintiff cannot prevail under a "constructive discharge" theory if the proof shows she did not leave her position "within a reasonable time after last being the subject of discrimination").

did not, in fact, voluntarily resign (such as by stopping coming to work or stopping seeking further shifts).

This would probably have to take the form of some evidence about conduct attributable to defendant or its agents. *Chertkova*, 92 F.3d at 88 (explaining that this inquiry is focused "on the reasonable perceptions of the employee, not on whether formal words of firing were in fact spoken"). For instance, a conversation with DM Handy (or SM Southworth, for that matter) would have shed some light on this topic. A written letter might also have done the job.[5]

But the parties' offering does not explain what happened or when. Instead, on plaintiff's version of the available record, she began delivering for Spark without telling defendant, at some point she missed a shift with defendant because she had an illness, SM Southworth saw plaintiff delivering for Spark one day, SM Southworth then submitted an internal record to defendant that incorrectly indicated plaintiff had a new job, and then . . . what?

Plaintiff skips past whatever contemporaneous knowledge she might have had about these events and goes right to defendant's internal records, which were not produced until later. Pl.'s Facts ¶¶ 83–86. On summary judgment, it is time "to put up or shut up." *Weinstock v. Columbia Univ.*, 224 F.3d

---

[5] The Court looked past the parties' Local Rule statements and searched plaintiff's deposition testimony to try to get an answer to this question. Dkt. No. 25-5. There is a brief reference to a mailing from defendant, *id*. at 143, that appears to have been sent to plaintiff at some point after she missed her shift (the one due to an illness), *id*. at 142. But plaintiff's testimony offers little on this point.

33, 41 (2d Cir. 2000). Absent something more, the Court finds that this is the unusual case in which plaintiff has not come forward with sufficient evidence that, viewed in her favor, would establish she was "terminated" in some qualifying adverse fashion, *i.e.*, that she was involuntarily separated and did not just voluntarily resign from defendant.

Even assuming otherwise and crediting plaintiff's essentially conclusory claim that she was *involuntarily* "terminated" by virtue of the internal system notation dated May 18, 2023, plaintiff would still need to show some evidence of pretext on this record to get to a jury on this intentional discrimination claim. *See, e.g.*, *Howard v. MTA Metro-North Commuter R.R.*, 866 F. Supp. 2d 196, 205 (S.D.N.Y. 2011) ("Despite the elaborate process set up in *McDonnell Douglas*, Second Circuit case law makes clear that a court may simply assume that a plaintiff has established a prima facie case and skip to the final step . . . as long as the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action.").

Notably, plaintiff's NYSHRL disparate treatment claims benefit from a slightly more plaintiff-friendly "motivating factor" causation standard. *See, e.g.*, *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327 (2020); *Naumovski v. Norris*, 934 F.3d 200, 213 (2d Cir. 2019). But regardless of whether the facts are viewed through the lens of this lessened causation standard (under the NYSHRL) or considered in light of traditional but-for

causation principles (as in Section 1981), defendant is entitled to summary judgment just the same.

The reason is that plaintiff has not identified sufficient evidence from which a rational fact-finder might fairly conclude that she was the victim of intentional race or sex discrimination in connection with defendant's decision to "terminate" her employment at that time. As defendant points out in reply, it is undisputed that DM Handy came to believe plaintiff voluntarily resigned her employment because SM Southworth reported to him—incorrectly or perhaps falsely—that she had taken a job with a different company (Wal-Mart, not Spark). *See* Dkt. No. 26 at 4.

Although plaintiff has identified evidence that might lead to the reasonable inference that <u>SM Southworth</u> possessed some level of racial or perhaps sexual animus against her, there is no evidence that he did anything vis-à-vis her "termination" other than make an allegedly false or inaccurate notation in defendant's internal system that indicated to DM Handy that plaintiff had taken a different job.

To be sure, there are times when a non-decisionmaker's bias can taint the ultimate employment decision. *See, e.g.*, *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 274–75 (2d Cir. 2016) (explaining so-called "cat's paw" theory of liability). But as discussed *supra*, there is insufficient evidence in the record from which to conclude that SM Southworth's false or inaccurate

notation in defendant's internal system, absent more of an explanation about its relevance to her alleged involuntary "termination," can carry all the weight of getting these disparate treatment claims over to a trial.

This is because even if a reasonable jury were to conclude that the notation made by SM Southworth in defendant's internal system played *some* role in plaintiff's "termination," there is nothing in the record to establish that defendant's decisionmaker's apparent reliance on this inaccurate internal notation (whether it was DM Handy or someone else running things on behalf of defendant) to eventually "terminate" her employment in the system on May 18, 2023, was anything other than reasonable and in good faith under the circumstances. After all, that is plaintiff's own explanation to the Court. *See* Pl.'s Opp'n, Dkt. No. 25 at 17 ("Instead, Defendant relied entirely on assumptions made by SM Southworth . . . regarding her employment status."). Accordingly, defendant is entitled to summary judgment on plaintiff's disparate treatment claims.

## 2. Retaliation

Second, plaintiff claims that defendant retaliated against her after she complained about SM Southworth's inappropriate behavior. In other words, plaintiff has alleged retaliation in response to her protected activity, which can be actionable if the defendant had a retaliatory intent or motive when taking the adverse action at issue. *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v.*

*White*, 548 U.S. 53 (2006).  New York's Whistleblower statute works much the same way.  *See, e.g.*, *Thacker v. HSBC Bank USA, N.A.*, 2023 WL 3061336, at *7 (S.D.N.Y. Apr. 24, 2023).

As with disparate treatment claims, a plaintiff can prove the employer's retaliatory animus with direct evidence.  *Mandell v. County of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003).  But as with direct evidence of discriminatory intent or motive, direct evidence of retaliatory animus is usually absent from the record.  *See, e.g.*, *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1183 (2d Cir. 1992).

Thus, retaliation claims also tend to rely on the aggregated weight of circumstantial proof.  *See, e.g.*, *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010).  "This usually involves evidence that the protected activity was followed closely by discriminatory treatment or with a showing that other employees who engaged in similar conduct were treated differently."  *Krul*, 705 F. Supp. 3d at 59 (citation omitted).

At summary judgment, the sufficiency of a retaliation claim is analyzed with the same *McDonnell Douglas* three-step burden-shifting framework that applies to intentional discrimination claims based on indirect proof.  *See, e.g.*, *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).  In the retaliation context, "temporal proximity plays an important role in

establishing indirect evidence of . . . retaliatory animus." *Krul*, 705 F. Supp. 3d at 63 (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).

Measured against this general body of law, plaintiff's retaliation claims fail for substantially the same reasons that her disparate treatment claim fails, *i.e.*, she has not offered a non-conclusory basis in the record from which a jury could fairly conclude that defendant's decisionmaker harbored any retaliatory animus against her at the time of her "termination" in its internal system.

There is no question that plaintiff engaged in protected activity when she complained about SM Southworth's conduct and unwanted advances. She reported this misconduct to DM Handy in March of 2023. Pl.'s Facts ¶ 46. A few days later, she submitted a written complaint to defendant's "portal for complaints" and notified RM Jessica Smith. *Id*. ¶¶ 47–48. This resulted in an investigation that left plaintiff unsatisfied. *Id*. ¶¶ 53–58. Thereafter, plaintiff told DM Handy that she did not want to work with SM Southworth anymore and requested to be reassigned. *Id*. ¶¶ 59–60.

On plaintiff's version of events, she never informed defendant that she was working for Spark, she continued to pick up shifts at some of defendant's other stores, at some point she missed a shift with defendant because she had an illness, SM Southworth saw plaintiff delivering for Spark one day, SM Southworth then submitted an internal record to defendant that incorrectly

indicated plaintiff had a new job, and then, at some point later, when defendant's HR inquired about why plaintiff's termination was coded as "voluntary," DM Handy explained that it was based on SM Southworth's report that plaintiff got a new job.  Dkt. No. 25 at 15–16.

Plaintiff claims that a jury could reasonably infer that SM Southworth entered this notation in defendant's system and "conveyed his assumptions to DM Handy in retaliation for her complaint."  Dkt. No. 25 at 16.  And the Court agrees that SM Southworth might have engaged in that conduct for just such a retaliatory reason.

But as discussed *supra*, there is nothing in the available record that sufficiently connects this false or inaccurate internal notation to any subsequent "adverse action," which in this case would be plaintiff's allegedly involuntary separation from employment.  *See, e.g.*, *Tepperwien v. Entergy Nuclear Ops., Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (cautioning that retaliation claims require a showing of some materially adverse harm to a reasonable employee that is highly context-dependent but not an entirely non-existent requirement).

Nevertheless, assuming for summary judgment that the missing link in this proof existed and that plaintiff was in fact involuntarily "terminated" in a materially adverse fashion, there is an absence of non-conclusory evidence in

the record that might establish that DM Handy (as the apparent decision-maker) harbored any retaliatory animus against plaintiff.

As defendant points out, DM Handy offered plaintiff shifts at other stores after the investigation into SM Southworth concluded, plaintiff was not prevented from working shifts at any other stores, and in fact plaintiff did work shifts at other stores. *See* Pl.'s Facts ¶¶ 59–69.

Absent some non-conclusory factual basis on which to reasonably conclude that DM Handy harbored some retaliatory animus against plaintiff, the mere fact that one event (the complaint and investigation) followed the other event (SM Southworth's internal record notation) by a few months in time cannot bear all the weight of getting this retaliation claim over to trial.

As before, even if a reasonable jury were to conclude that the notation by SM Southworth in defendant's internal documentation played *some* role in plaintiff's "termination," there is nothing in the record to establish that DM Handy's apparent reliance on this notation—if that is what he did, since the parties leave the decision-maker unclear on this record—was anything other than reasonable and in good faith (*i.e.*, not discriminatory or retaliatory) under the circumstances. *Cf. Vasquez*, 835 F.3d at 275. Accordingly, defendant is entitled to summary judgment on plaintiff's retaliation and whistleblower claims.

### 3. Hostile Work Environment

Finally, plaintiff asserts NYSHRL claims for a racially or sexually hostile work environment, which are actionable if the plaintiff shows that she was subjected to "inferior terms, conditions or privileges of employment" because of her membership in one of the protected categories. *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023).

Notably, this plaintiff-friendly legal standard is the result of a 2019 state-law amendment that represents an intentional departure from Title VII's more demanding "severe or pervasive" standard for these claims. *See, e.g.*, *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 452 n.4 (S.D.N.Y. 2024); *Cooper v. Franklin Templeton Inv.*, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) (summary order) (noting 2019 state-law amendment).

Although it is not yet settled, most trial courts apply the more forgiving New York City Human Rights Law ("NYCHRL") standard to post-amendment NYSHRL hostile work environment claims. *See, e.g.*, *Ferrando-Dehtiar v. Anesthesia Grp. Of Albany, P.C.*, 727 F. Supp. 3d 165, 189 (N.D.N.Y. 2024); *Garrison v. Am. Sugar Refining, Inc.*, 789 F. Supp. 3d 291, 313 (S.D.N.Y. 2025) (explaining amendment became effective October 11, 2019).

Under the NYCHRL, a plaintiff need only show "unequal treatment based upon membership in a protected class." *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 287 (S.D.N.Y. 2024) (quoting *Nieblas-Love v. N.Y. City Hous.*

*Auth.*, 165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016)). Put differently, a plaintiff must show that she was "treated 'less well' because of discriminatory intent." *Lee*, 751 F. Supp. 3d at 287 (quoting *Colon v. Fashion Inst. of Tech.*, 983 F. Supp. 2d 277, 292 (S.D.N.Y. 2013). "In evaluating a hostile work environment claim, the court must look at the 'totality of the circumstances.'" *Lee*, 751 F. Supp. 3d at 287 (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).

Measured against this general body of law, plaintiff has identified sufficient evidence from which a rational fact-finder could conclude that she endured unwanted race- and/or gender-based conduct and that, as a result, she was subjected to inferior terms, conditions, or privileges of employment because of her membership in one or both of those protected categories. *See, e.g.*, *Garrison v. Am. Sugar Refining, Inc.*, 789 F. Supp. 3d 291, 314–15 (S.D.N.Y. 2025) (race); *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 183 (S.D.N.Y. 2023) (gender).

Defendant acknowledges that the amended version of the NYSHRL is much more plaintiff-friendly vis-à-vis a hostile work environment claim, but argues that it is nevertheless entitled to summary judgment on the basis of the so-called *Faragher/Ellerth* affirmative defense. Dkt. No. 24-1 at 16. According to defendant, it exercised reasonable care to prevent and correct any alleged

discriminatory or harassing conduct and plaintiff unreasonably failed to take advantage of defendant's preventive or corrective opportunities. *Id.* at 17.

Where, as here, the alleged harasser (SM Southworth) was a "supervisor" but the plaintiff fails to point to a tangible employment action (such as an involuntary termination), "the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).

"An employer may demonstrate the exercise of reasonable care, required by the firs element, by showing the existence of an antiharassment policy during the period of the plaintiff's employment, although that fact alone is not always dispositive." *Ferraro v. Kellwood Co.*, 440 F.3d 96, 102 (2d Cir. 2006) (citations omitted). "And under the second element, proof that an employee has unreasonably failed to use the employer's complaint procedure normally suffices to satisfy the employer's burden." *Id.*

This doctrine does not apply to claims under the NYCHRL. *Edrisse v. Marriott Int'l, Inc.*, 757 F. Supp. 2d 381, 389 n.47 (S.D.N.Y. 2010) (quoting *Zakrzewska v. New School*, 928 N.E.2d 1035 (N.Y. 2010)). But courts have historically found the defense available under the NYSHRL. *See Fay v. City of*

*Newburgh*, 2024 WL 4169552, at \*9 (S.D.N.Y. Sept. 12, 2024) (collecting cases); *Green v. N.Y. City Trans. Auth.*, 2020 WL 5632743, at \*10 (S.D.N.Y. Sept. 21, 2020).

Measured against this general legal standard, the Court cannot say that defendant has carried its burden.  The problem for defendant is that dismissal on this basis— *Faragher/Ellerth* is an affirmative defense—would only be warranted if defendant were able to prove its entitlement to judgment as a matter of law.  *Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 307 (S.D.N.Y. 2015) (emphasizing this is defendant's burden).

On plaintiff's version of events, she rejected SM Southworth's unwanted advances, eventually reported him to DM Handy and to others, and defendant acted unreasonably by, *inter alia*, initially failing to take it seriously, indicating that plaintiff should continue working with SM Southworth, forcing plaintiff to escalate her concerns to other supervisors, which resulted in a haphazard investigation that failed to apply its "zero tolerance" policy and failed to substantiate plaintiff's well-supported complaints, which were corroborated by at least one other employee.  Thereafter, plaintiff was forced to take steps of her own accord to avoid further mistreatment from her harasser, which included seeking out less favorable work assignments at other stores.

In other words, there are outstanding fact disputes about both the sufficiency of plaintiff's complaints to defendant about SM Southworth's alleged

conduct and, relatedly, whether defendant's approach to remedial action (the investigation, etc.) was reasonable and adequate under the circumstances. *See, e.g.*, *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 183 (2d Cir. 2012); *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 656 (E.D.N.Y. 2015). Accordingly, defendant's motion for summary judgment on this claim must be denied.

## IV.   CONCLUSION

Plaintiff's federal-law claims will be dismissed. Her remaining claim arises under state law. Where, as here, a pleading only invokes federal-question jurisdiction, Compl. ¶ 4, and all federal-law claims are being dismissed before trial, federal courts generally decline to exercise supplemental jurisdiction over any remaining state-law claims. *See, e.g.*, *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018).

The Court is inclined to do that here because the remaining claim involves novel issues of state law. *See* 28 U.S.C. § 1367(c)(1). First, as noted *supra*, the precise legal standard that applies to a post-amendment NYSHRL hostile work environment claim is still up in the air. Second, the employer-defendant has raised the question of whether a federal-law affirmative defense (*Faragher/Ellerth*) that has been traditionally applied to NYSHRL claims should still apply to this particular kind of NYSHRL claim, which has recently been the subject of a state-law amendment. *Cf. Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 124 (2d Cir. 2006) ("We have repeatedly held that a

district court particularly abuses its discretion when it retains jurisdiction over state-law claims raising unsettled questions of law following dismissal of all original-jurisdiction claims.").

However, the parties might be diverse.  Plaintiff's complaint does not invoke the diversity statute (§ 1332).  But plaintiff is alleged to be a New York domiciliary.  Compl. ¶ 2.  And although "Dollar General" might be defendant's corporate parent, *see id.* ¶ 3, defendant just is a limited liability corporation ("LLC") with "New York" in its name that operates a retail store in New York, *see* Dkt. No. 10.

An LLC takes on the citizenship of its members for jurisdictional purposes. *See, e.g., Kenshoo, Inc. v. Aragorn Advertising, LLC*, 586 F. Supp. 3d 177, 180–88 (E.D.N.Y. 2022).  And despite the inclusion of a question on this *exact* topic in the Rule 16 disclosures, defendant failed to disclose its membership.  *See* Dkt. No. 13 ¶ 9. So it is unclear whether diversity might supply an alternative basis for jurisdiction.  But even if it does, this matter would still be better off in state court, which is better suited to examining the remaining state-law claim in light of recent state-law developments.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment (Dkt. No. 24) is GRANTED in part and DENIED in part;

2. Plaintiff's Section 1981 claims for disparate treatment and retaliation are DISMISSED;

3. Plaintiff's NYSHRL claims for disparate treatment and retaliation are DISMISSED;

4. Plaintiff's state-law claims based on common-law negligence or the state whistleblower law are DISMISSED;

5. Plaintiff's NYSHRL hostile work environment claim based on race and/or sex REMAINS FOR TRIAL; and

6. Within FOURTEEN DAYS of the date of this opinion, each party shall file a status report, not to exceed FIVE PAGES in length, explaining whether (a) this Court retains jurisdiction over the remaining state-law claim; (b) if so, on what basis; and, depending on the answer to those two antecedent questions, (c) whether the Court should nevertheless decline to exercise jurisdiction or otherwise dismiss this case without prejudice in light of the novel question(s) of state law implicated by the remaining state-law claim.

The Clerk of the Court is directed to terminate the pending motion and set a status report deadline accordingly.

IT IS SO ORDERED.

Dated:  March 24, 2026
        Utica, New York.

David N. Hurd
U.S. District Judge